Ex parte Victor M. CUEVAS, Jr.

No. 08–03–00311–CR.

Court of Appeals of Texas, El Paso.

Oct. 30, 2003.

Chuck Lanehart, Chappell, Lanehart & Aldridge, Lubbock, for Appellant.

Ricky B. Smith, Dist. Atty., Lamesa, for Appellee.

Before Panel No. 1 LARSEN, McCLURE, and DAVID WELLINGTON CHEW, JJ.

### *OPINION*

DAVID WELLINGTON CHEW, Justice.

Appellant Victor M. Cuevas, Jr. is charged with the offense of engaging in organized criminal activity and the offense of theft of property, to wit: a John Deere tractor in the value of $100,000 or more but less than $200,000. Bail was set at $1,000,000. Appellant filed a motion to reduce the amount of bond to $10,000. After a hearing, the trial court denied Appellant's motion. Appellant now brings this appeal, challenging the trial court's order denying his motion to reduce bond.

We reverse and remand to the trial court for further proceedings consistent with this opinion.

On May 29, 2003, Appellant was indicted for the offenses of engaging in organized criminal activity and theft. Appellant filed a motion to reduce bond on June 16, 2003. On June 19, 2003, the trial court conducted a hearing on the motion. At the hearing, Appellant called two witnesses to testify on his behalf, his sister Maribel Rodriguez and Joe Nagy, Jr., a local attorney familiar with bail issuance and bondsmen in the area. Ms. Rodriguez testified that Appellant is one of eight children in the Cuevas family and is a naturalized citizen who was born in Mexico. Most of Appellant's immediate family lives in Seminole and Odessa, Texas. Prior to his arrest, Appellant had been living in El Paso for four years. Appellant was self-employed and sold seed to farmers. Ms. Rodriguez believes Appellant has close family ties to Gaines County. Appellant's father has property holdings in Gaines County, valued at approximately $200,000, which he would be willing to use to post bail for Appellant. Appellant has three children with an ex-wife and his common-law partner is pregnant and due in December. Ms. Rodriguez testified that she talked to some bail bondsmen about posting bail in the amount of $1 million and was told it was not possible. Ms. Rodriguez believes that $50,000 or less would be a reasonable amount of bail in this case.

On cross-examination, Ms. Rodriguez conceded that she contacted one bond agency in Odessa, and that at the time, she did not know a lot about Appellant's case. The agency she contacted did not provide an amount because they needed more information. Ms. Rodriguez admitted that she never received a figure from a bail bondsmen to determine how much money the family would have to raise. Ms. Rodri-

guez does not know how much property Appellant owns. Ms. Rodriguez also admitted that she is aware her brother and his partner were arrested in Oklahoma and are facing drug conspiracy charges in that state.

Attorney Joe Nagy, Jr., local counsel for Appellant, testified that he is familiar with how bail is generally posted in Gaines County and familiar with some of the local bondsmen. With respect to Appellant's case, Mr. Nagy spoke with Jim Caton, a local bondsman. Mr. Caton informed him that the largest amount most bondsmen are willing to post is a bond for $25,000, for which they request 10 percent, that is, $2,500 for a $25,000 bond. Mr. Nagy's office contacted several bondsmen, but they were unable to find a bondsman who would be willing to post a $1 million bail no matter what the fee. Mr. Nagy believes that bail of less than $50,000 would be a reasonable amount for the family to post.

On cross-examination, Mr. Nagy provided additional information about his conversation with Mr. Caton. Mr. Nagy asked Mr. Caton if there anyway that they could get a $1 million bail in Seminole, and Mr. Caton said no. Mr. Caton also did not think that they could find another bondsman in the state that could post that bail amount. Mr. Nagy mentioned to Mr. Caton that Appellant's father had property that could be of value at $250,000. Mr. Caton replied, "Joe, I'm not doing a $1 million bond. I don't care what they have."

After Appellant rested, the State made a motion in which it argued that Appellant had failed to satisfy his burden under *Ex parte Williams*, 467 S.W.2d 433 (Tex.Crim. App.1971), to show that he had made an adequate effort to furnish bail in this case. The State noted that Ms. Rodriguez did not know how much property Appellant owned and was never told by a bondsman

the amount of money they would need for bail. The State further noted that Mr. Caton said he would not furnish bail under any circumstances. Based on the State's argument, the trial court stated that it would follow *Ex parte Williams* and found that Appellant had failed to meet the burden purportedly set in *Ex parte Williams;* that is, a showing that Appellant has not been able to make bond. The trial court then stated that Appellant's bail remained set at $1 million. Appellant now appeals the trial court's order denying his motion to reduce bond.

Appellant contends the trial court abused its discretion in denying his motion to reduce bond because bail set by the trial court was excessive. We agree.

■ The primary purpose of an appearance bond is to secure the presence of the accused in court for the trial of the offense charged. *Ex parte Rodriguez,* 595 S.W.2d 549, 550 (Tex.Crim.App.1980); *Ex parte Vasquez,* 558 S.W.2d 477, 479 (Tex. Crim.App.1977); *Ex parte Green,* 940 S.W.2d 799, 800–01 (Tex.App.-El Paso 1997, no pet.). Bail should therefore be set in an amount sufficient to give reasonable assurance that the defendant will appear at trial, but it should not be an amount that acts as an instrument of oppression. *See Ex parte Ivey,* 594 S.W.2d 98, 99 (Tex.Crim.App.1980); *Ex parte Vasquez,* 558 S.W.2d at 479. The burden of proof is on the applicant to prove that the bail set is excessive. *Ex parte Rubac,* 611 S.W.2d 848, 849 (Tex.Crim.App.1981).

Under Texas law, the amount of bail required in any case is set pursuant to the discretion of the court, judge, magistrate, or officer and is governed by the following rules as set forth in Article 17.15 of the Texas Code of Criminal Procedure:

(1) The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

(2) The power to require bail is not to be so used as to make it an instrument of oppression.

(3) The nature of the offense and the circumstances under which it was committed are to be considered.

(4) The ability to make bail is to be regarded, and proof may be taken upon this point.

(5) The future safety of a victim of the alleged offense and the community shall be considered.

*See* TEX.CODE CRIM.PROC.ANN. art. 17.15 (Vernon Supp.2003).

 The following factors should also be considered in determining the amount of bail: (1) the accused's work record; (2) the accused's family and community ties; (3) the accused's length of residency; (4) the accused's prior criminal record, if any; (5) the accused's conformity with the conditions of any previous bond; (6) the existence of outstanding bonds, if any; and (7) aggravating circumstances alleged to have been involved in the offense the accused is charged with committing. *Ex parte Green*, 940 S.W.2d at 801, *citing Ex parte Rubac*, 611 S.W.2d 848, 849–50 (Tex.Crim. App.1981). We review the trial court's ruling for an abuse of discretion. *Ex parte Rubac*, 611 S.W.2d at 850.

Appellant complains that the trial court abused its discretion in denying his motion to reduce bail. In response, the State argues that Appellant failed to met his burden in showing that as a *prima facie* matter, he made an effort to furnish bond in the amount fixed, relying on *Ex parte Williams*. We find that the State's reliance on *Ex parte Williams* is illused. In *Ex parte Williams*, the Court of Criminal Appeals reviewed a trial judge's refusal to reduce bail. *Ex parte Williams*, 467

S.W.2d at 434. The Court held that the trial court did not abuse its discretion in refusing to lower the bond, stating that the appellant's ability to make bond is not the sole criteria in setting bond. *Id.* The Court then added that *"[f]urther*, there is no evidence in·this record that an effort has been made by this appellant to furnish a bail in the amounts fixed by the Justice of the Peace Court. In the absence of such evidence, the complaint of excessive bail is not presented." [Emphasis added]. *Id. Ex parte Williams* does not establish an implicit *prima facie* burden that Appellant must satisfy before consideration of the factors set out in Article 17.15 of the Texas Code of Criminal Procedure. Rather, *Ex parte Williams* merely addresses Appellant's burden in proving excessive bail with respect to his ability to pay.

Here, Appellant presented evidence to show he made an effort to furnish bond in the amount set. Appellant unsuccessfully attempted to secure a bond in the amount set, therefore, this aspect of his burden of proof was satisfied. It is evident from the record that the trial court failed to consider Article 17.15 factors and relevant case law in its decision not to reduce bond in this case. *See* TEX.CODE CRIM.PROC.ANN. art. 17.15; *Ex parte Rubac*, 611 S.W.2d at 849–50. Therefore, the trial court abused its discretion in failing to consider TEX. CODE CRIM.PROC.ANN. art. 17.15 in its determination of bail setting. We sustain Appellant's issues on appeal.

Accordingly, we reverse and remand this case to the trial court for further proceedings consistent with this opinion